IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| SHIRLEY MORRISON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 1:07-CV-139 (WLS) |
| CITY OF BAINBRIDGE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CITY OF BAINBRIDGE'S MOTION FOR SUMMARY JUDGMENT

Defendant City of Bainbridge, Georgia (hereinafter, "Defendant" or "City"), pursuant to Local Rule 7.1, M.D. Ga., submits this Memorandum in Support of its Motion for Summary Judgment.

## I.   INTRODUCTION

Plaintiff, the former Purchasing Director for the City, brought this employment discrimination action against the City of Bainbridge, its City Manager Chris Hobby, and its former Director of General Administration Steve McKown. Plaintiff alleges that the City terminated her employment because she is an "older woman" in violation of her combined rights under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act of 1967 ("ADEA"), and the Equal Protection Clause of the Fourteenth Amendment

pursuant to 42 U.S.C. § 1983.  By Order entered September 4, 2009, the Court dismissed Plaintiff's Section 1983 claims and dismissed Hobby and McKown from this case, leaving only Plaintiff's "intersectional" Title VII and ADEA claims against the City.  [Doc. 50.]  For the reasons that follow, the City is entitled to summary judgment on these claims.

## II.  SUMMARY OF UNDISPUTED MATERIAL FACTS

### A.  Background Facts

Plaintiff worked as the head of the City's Purchasing Department from approximately 1979 until her termination in May 2005.  (SMF 5, 46.)  In that role, she was responsible for managing the Purchasing Department, which included supervising assigned staff, interacting with various City officials, assisting other City departments, and communicating and maintaining relationships with City vendors.  (SMF 5.)

### B.  The City's June 2004 Reorganization

In June 2004, City Manager Chris Hobby implemented a substantial reorganization of the City which was designed to facilitate more efficient management within the City.  (SMF 16.)   Prior to the reorganization, ten department heads, including Plaintiff, reported directly to the City Manager.  (SMF 16.)  As part of the reorganization, Hobby consolidated all of the individual departments within the City into six new "divisions," with some of the department

heads, including Plaintiff, reporting to a division head, who in turn reported to the City Manager.  (SMF 16.)  Because the Purchasing Department was placed under the General Administration Division as part of the reorganization, Plaintiff began to report to the newly appointed Director of Administration, Steve McKown. (SMF 16, 18.)  Plaintiff's official job title changed from Purchasing Director to Purchasing Agent to reflect the organizational changes, although she continued to supervise the Purchasing Department and suffered no decrease in her salary.[1] (SMF 17.)

**C.   Plaintiff's July 15, 2004 Reprimand**

On July 15, 2004, following an incident the previous day in which Plaintiff had subverted McKown's chain-of-command, Hobby and McKown met with Plaintiff to discuss the incident as well as other performance deficiencies.  (SMF 23-30.)  During the meeting, they informed Plaintiff of complaints that had been received from vendors, her subordinates, and other City employees about the difficulties they had working with Plaintiff.  (SMF 23-30.)  They gave Plaintiff a written reprimand and warned her that such behavior would no longer be tolerated. (SMF 23-30.)   Plaintiff responded by acknowledging and addressing each performance deficiency outlined in the reprimand.  (SMF 32.)

---

[1] Plaintiff is not pursuing a claim in this action based on the reorganization.

**D.**   **Plaintiff's November 2004 Performance Evaluation**

On November 16, 2004, McKown met with Plaintiff to conduct her annual performance evaluation.  (SMF 34.)  During that meeting, he complimented upon her efforts to improve her relationships with others and reminded her to continue being mindful of her professional conduct.  (SMF 35.)  Based upon her perceived efforts to improve her performance following her July 2004 reprimand, McKown recommended, and Hobby approved, a 3% merit raise.  (SMF 36.)

**E.**   **Plaintiff's Termination**

Less than three months after her evaluation, McKown received a complaint from Tonya Alphord, Plaintiff's secretary, regarding a dispute that had occurred between her and Plaintiff on February 4, 2005.  (SMF 37.)  McKown investigated the complaint and determined that Plaintiff had created a "hostile work environment" within the Purchasing Department through intimidation, rudeness, and condescension toward her subordinates.  (SMF 39.)   On this basis, he concluded that her behavior could no longer be tolerated.  (SMF 39.)  McKown therefore suspended Plaintiff and recommended her termination to Hobby.  (SMF 39.)

Hobby reviewed McKown's recommendation and, prior to making a decision, requested that he obtain additional statements from Plaintiff's subordinates about their overall work experience with Plaintiff.  (SMF 40.)  Hobby

- 4 -

requested the additional information so that he could independently evaluate the situation and determine whether termination was warranted.  (SMF 40.)  Hobby reviewed the statements and, based upon that information, as well as his personal knowledge of her behavior and prior complaints, concluded that Plaintiff's continued employment was no longer in the City's best interest.  (SMF 42.)

On April 11, 2005, Hobby met with Plaintiff and her attorney pursuant to the City's disciplinary policy to discuss the proposed termination and allow Plaintiff the opportunity to present mitigating circumstances.  (SMF 44.)  Following the meeting, Hobby upheld McKown's termination recommendation.  (SMF 44.) Thereafter, Plaintiff appealed her termination to the City's Grievance Committee which, following a hearing on May 16, 2005, voted unanimously to uphold Plaintiff's termination based on its consideration of the evidence presented.  (SMF 45-46.)

## III.   <u>ARGUMENT AND CITATION OF AUTHORITY</u>

### A.   <u>Defendant Is Entitled to Summary Judgment on Plaintiff's Title VII Claim Because Plaintiff Cannot Establish a Prima Facie Case of Sex Plus Age Discrimination Under Title VII.</u>

Plaintiff alleges that the City subjected her to "intersectional discrimination" (sex plus age) in violation of Title VII.  (First Amended Complaint, ¶ 24.)  In cases such as this – where there exists no direct evidence of sex discrimination – the Eleventh Circuit utilizes the <u>McDonnell Douglas</u> burden-shifting analysis for cases

based on circumstantial evidence.  Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997).  Under McDonnell Douglas, Plaintiff must establish a prima facie case of sex discrimination by showing:  (1) that she is a member of a protected class; (2) that she was qualified for the job; (3) that she was subjected to an adverse employment action; and (4) that similarly-situated employees outside of her protected class were treated more favorably.  See Holifield, 115 F.3d at 1562.[2/]  If Plaintiff satisfies her initial burden, the burden shifts to the City to articulate a legitimate, non-discriminatory reason for its action.  Id.  at 1564.  If the City meets its burden, Plaintiff must then prove that the City's proffered reasons for its actions are pretext for unlawful discrimination.  Id. at 1565.

> **1.** **Since Plaintiff Alleges She Is a Member of a Protected Sub-Class of Older Women, Her Comparators Are Limited to Older Men.**

Plaintiff's Title VII claim is based upon the allegation that she was discriminated against on the basis of her gender in combination with her age.  This type of discrimination – where a plaintiff contends that he/she is a member of a protected sub-class – has been referred to as "sex-plus" discrimination.  See Jefferies v. Harris County, 615 F.2d 1025 (5th Cir. 1980); Arnett v. Aspin, 846 F.

---

[2/] An alternative prima facie case model applies if the plaintiff can show that she was replaced by someone outside of her protected class.  See Goddard v. City of Albany, No. 1:06-CV-034 (CDL), 2008 WL 794854, *5 (M.D. Ga. March 20, 2008).  In this instance, however, it is undisputed that Plaintiff was replaced by Brenda Strickland, a female.  (SMF 55.)

Supp. 1234, 1238 (E.D. Pa. 1994).  The purpose for recognizing "sex-plus" claims under Title VII has been to provide a plaintiff with a way to survive summary judgment under the fourth element of the McDonnell-Douglas analysis when the employer has not discriminated against all members of the plaintiff's sex.  Arnett, 846 F. Supp.  at 1240.  Cf. Phillips v. Martin Marietta Corp., 400 U.S. 542 (1971) (recognizing protected sub-class of women with pre-school age children, where employer did not discriminate against women without pre-school age children). Thus, an employer's actions toward employees of the same sex as the plaintiff, but who are not within the plaintiff's protected sub-class, are not considered for purposes of a plaintiff's prima facie case.

Moreover, sex-plus discrimination claims must always be "premised on gender" and cannot be based on the additional characteristic alone.  Coleman v. B-G Maintenance Management of Colorado, Inc., 108 F.3d 1199, 1203 (10th Cir. 1997) ("[W]hen one proceeds to cancel out the common characteristics of the two classes being compared ([e.g.,] married men and married women)], as one would do in solving an algebraic equation, the cancelled-out element proves to be that of married status, and sex remains the only operative factor in the equation." (emphasis and brackets in original)). See also Sherman v. American Cyanamid Co., 996 F. Supp. 719, 721 (N.D. Ohio 1998); Longariello v. School Bd. of Monroe County, 987 F. Supp. 1440, 1449 (S.D. Fla.1997).

Accordingly, for purposes of Plaintiff's prima facie case, she must establish that the City treated similarly-situated older male employees more favorably. See Coleman, 108 F.3d at 1203. To be similarly situated, the comparators must have been "involved in or accused of the same or similar misconduct and are disciplined in different ways." Holifield, 115 F.3d at 1562. They must "have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Williams v. Publix Warehouse, No. 92-1254-CIV-T-17(A), 1995 WL 224423, at *4 (M.D. Fla. Apr. 6, 1995), aff'd, 100 F.3d 969 (11th Cir. 1996). The "quantity and quality of the comparator's misconduct must be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." McCann v. Tillman, 526 F.3d 1370, 1373 (11th Cir. 2008). See also Johnson v. Atlanta Independent School System, 137 Fed. Appx. 311, 314 (11th Cir. 2005).

> **2.    Plaintiff's Prima Facie Case Fails because She Cannot Establish the Existence of Any Relevant Comparators.**

Plaintiff has identified as comparators five "older" male employees whom she contends the City treated more favorably – Dewayne Logue, Gene Powell, Bob Gardner, Tommy King, and Larry Funderburke. (SMF 58-63.) Plaintiff cannot establish that any of these men engaged in misconduct "nearly identical" to her

- 8 -

misconduct, i.e., fostering a hostile work environment through intimidation, rudeness, and condescension toward others.

Plaintiff testified that Dewayne Logue, a mechanic, is a comparator because he, like Plaintiff, was a department head and after several members of his crew were caught working on a personal vehicle during work hours, he was demoted, not fired. (SMF 58.) Plaintiff has offered no evidence that Logue was accused of creating a hostile work environment. Moreover, contrary to what Plaintiff suggests, Logue's demotion was unrelated to any disciplinary action. (SMF 59.) Thus, Logue is not a proper comparator for purposes of Plaintiff's prima facie case.

Plaintiff contends that Gene Powell, a pump operator in the Fire Department, is a comparator because he was allowed to retire after 30 years of employment. (SMF 60.) Plaintiff has offered no evidence of misconduct by Powell and admits that she knows of no disciplinary action taken against him; thus, he is not a proper comparator. (SMF 60.) Plaintiff further identified Bob Gardner, a building inspector, as a comparator because he allegedly had a confrontation with City Manager Chris Hobby during a staff meeting, but did not lose his job. (SMF 61.) Plaintiff has offered no evidence that Gardner was accused of fostering a hostile work environment. Therefore, Gardner is also not a proper comparator.

Plaintiff has further identified Tommy King, Public Works Director, as a comparator. Plaintiff asserts that King's employees "were disgruntled with the

operation and with . . . the decisions that had been made," particularly, a decision by King not to promote one of his employees.  (SMF 62.)  Assuming that such complaints existed, they were not based on King's rudeness, intimidation, or condescension toward his employees, but instead, based on King's personnel decisions.

Plaintiff also asserts that Larry Funderburke, Public Safety Director, is a comparator because his employees complained about him and he did not lose his job.  (SMF 63.)  Plaintiff has no evidence of any complaints against Funderburke, and, assuming that such complaints existed, there is no evidence that Funderburke was accused of fostering a hostile work environment.  (SMF 63.)  Thus, King and Funderburke are not proper comparators.  See Morris v. Emory Clinic, Inc., 402 F.3d 1076, 1082 (11th Cir. 2005) (noting that proper comparator analysis in Title VII claim of male physician who was fired because of complaints made by patients could not be performed without a showing that a comparable female physician received "nearly identical" complaints).

Finally, none of the comparators identified by Plaintiff was supervised by Steve McKown and for this additional reason, they were not similarly situated to Plaintiff in "all relevant respects."  (SMF 59, 61-63.)  See Wilson v. B/E Aerospace, Inc., 37 F.3d 1079, 1261 n.5 (11th Cir. 2001) ("[D]ifferences in treatment by different supervisors or decision makers can seldom be the basis for a

viable claim of employment discrimination."); see also Jones v. Gerwens, 874 F.2d 1534, 1541 (11th Cir. 1989).  Since Plaintiff cannot establish a prima facie case of sex plus age discrimination under Title VII by demonstrating the existence of a similarly situated older male employee whom the City treated more favorably, or through other evidence of sex plus age discrimination,[3/] Defendant is entitled to judgment as a matter of law and Plaintiff's Title VII claim should be dismissed with prejudice.  See Morris, 402 F.3d at 1082.

**B.**     **Defendant Is Entitled to Summary Judgment on Plaintiff's Title VII and ADEA Claims because She Cannot Make the Requisite Showing of Pretext.**

**1.**     **Plaintiff Cannot Show Direct Evidence of Age Discrimination.**

As an initial matter, Plaintiff has offered no direct evidence of age discrimination.   Direct evidence is "evidence, which if believed, proves [the] existence of [a] fact in issue without inference or presumption."  Goddard v. City of Albany, No. 1:06-CV-034 (CDL), 2008 WL 794854, at *4 (M.D. Ga. March 20, 2008) (quoting Rollins v. TechSouth, Inc., 833 F.2d 1525, 1528 n. 6 (11th Cir. 1978)).  "Such evidence is composed only of the most blatant remarks, whose intent could be nothing other than to discriminate." Goddard, 2008 WL 794854 at *4 (internal quotations omitted).   "Statements that at best merely suggest a discriminatory motive, or that could by inference have more than one possible

---

[3/] See footnote 2, p. 6.

meaning are circumstantial, and not direct, evidence of discrimination." Id. (internal quotations and citations omitted).

The only evidence in this case that is remotely probative of age discrimination is an alleged remark by Steve McKown that he was going to "get rid of the old folks and bring in new blood." (See First Amended Complaint, ¶ 17; SMF 49.) Plaintiff testified that in or about October 2004, she observed McKown walk out of Chris Hobby's office and make the statement as he was walking into the hallway. (SMF 49.) Plaintiff further testified that she believes that McKown made the statement for her benefit and concluded that he therefore had a plan to terminate her because she is an older woman. (SMF 49.) Nevertheless, Plaintiff has no evidence that McKown saw her in the hallway, nor does she have evidence of the context of the remark such that one could conclude that McKown's intent was nothing other than to discriminate against Plaintiff on the basis of her age. See Goddard, 2008 WL 794854 at *4; see also Damon v. Fleming Supermarkets, 196 F.3d 1354, 1358-59 (holding that comment by decision-maker to the plaintiff's replacement immediately after the plaintiff's termination that "what the company needed was aggressive young men like [the replacement] to be promoted" was not direct evidence of discrimination). Furthermore, the remark was allegedly made nearly four months prior to any adverse action taken by McKown against Plaintiff. See Ash v. Tyson Foods, Inc., No. 04-11695, 2006 WL 2219749, *2 (11th Cir.

- 12 -

Aug. 2, 2006) (explaining that stray remarks not uttered in context of challenged personnel actions are not even sufficient circumstantial evidence to provide a reasonable basis for a finding of discrimination).  Accordingly, McKown's alleged remark is not direct evidence of discrimination against Plaintiff.

### 2. The City Has Articulated Legitimate, Non-discriminatory Reasons for Its Actions.

Assuming, arguendo, that Plaintiff can establish a prima facie case under both Title VII and the ADEA,[4] the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for the adverse actions taken against Plaintiff; namely, her suspension and termination.  See Holifield, 115 F.3d at 1562; Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir. 2000).  The basis for each decision will be addressed in turn.

### a. Plaintiff's February 2005 Suspension

In February 2005, Steve McKown suspended Plaintiff for fostering a hostile work environment.  The events leading up to the suspension are as follows.  Prior to becoming Plaintiff's supervisor, McKown had worked with Plaintiff while he was the City's Accounting Manager and then Finance Director.  (SMF 18.)  During

---

[4] Plaintiff is unable to establish a prima facie case in support of her Title VII claim for the reasons previously stated.  As such, her inability to make the requisite showing of pretext with regard to the City's legitimate, non-discriminatory reasons presents an alternative basis for summary judgment on Plaintiff's Title VII claim. As to Plaintiff's ADEA claim, Defendant concedes that Plaintiff can meet the elements of a prima facie case, given that she was replaced by a younger individual.  See Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir. 2000).

that time, as well as after he became her supervisor, he had received numerous complaints from City employees, as well as the City's vendors, regarding Plaintiff's harshness toward others, her inflexibility, and her quick-temper. (SMF 25-27.) In July 2004, shortly after McKown became Plaintiff's supervisor, he warned her that such unprofessional conduct would not be tolerated. (SMF 24-30.)[5]

Following the warning, Plaintiff's behavior briefly improved and in November 2004, McKown gave her a positive evaluation and 3% merit increase. (SMF 36.) Nevertheless, he again warned her about her adversarial interactions with others. (SMF 35.) Less than three months later, one of Plaintiff's subordinates, Tonya Alphord, came to McKown and was ready to quit her job after an incident that had occurred between her and Plaintiff. (SMF 37.) McKown therefore met with Plaintiff's two other subordinates to determine what had occurred between Plaintiff and Alphord. (SMF 38.) He had each of them prepare a written statement about what they had observed. (SMF 38.) From this, McKown concluded that Plaintiff was continuing to create an unnecessarily stressful and adversarial work environment for her employees, despite the

---

[5] The complaints and other statements received by McKown are offered to establish the information available to him and upon which his actions were based. They are not offered to prove the truth of the matter asserted and, as such, do not constitute inadmissible hearsay. See Doe v. AFL-CIO, 405 F. Supp. 389, 392 (N.D. Ga. 1975), aff'd, 537 F.2d 1141 (5th Cir. 1976); Littlefield v. American Radio, 2006 WL 735048, n.4 (N.D. Ga. Mar. 20, 2006).

warnings he had given her and the brief improvement she had shown.  (SMF  39.)

As a result, he suspended Plaintiff  without pay pending termination.  (SMF  39.)

### b.    Plaintiff's Termination

In conjunction with her suspension, McKown recommended to Chris Hobby

that Plaintiff be terminated based upon his belief that she was continuing to create

a  hostile  work  environment.    (SMF  39.)    Along  with  his  recommendation,

McKown provided Hobby the written statements he had collected from Plaintiff's

subordinates.  (SMF  39.)  After reviewing McKown's recommendation, Hobby

requested  that  he  obtain  additional  statements  from  Plaintiff's  subordinates

regarding  their  overall  work  experience  with  Plaintiff  so  that  he  could

independently  evaluate  the  situation.    (SMF  40.)    The  additional  statements

obtained by McKown revealed a level of angst and strife between Plaintiff and her

subordinates caused by Plaintiff's demeaning attitude and demoralization of her

employees.  (SMF 41-42.)   Based upon this information, as well as his personal

knowledge  of  Plaintiff's  ongoing  issues  getting  along  with  others  within  the

workplace, Hobby concluded that Plaintiff's continued employment was not in the

City's best interest.

On April 11, 2005, Hobby met with Plaintiff and her attorney pursuant to the

City's disciplinary policy to discuss the proposed termination.  (SMF 44.)  At no

point during this process did Plaintiff ever allege that her proposed termination was

motivated by unlawful discrimination.  (SMF 44.)  Following the meeting, Hobby

upheld McKown's termination recommendation.  (SMF 44.)[6]

Pursuant to City policy, Plaintiff invoked her right to appeal her termination

to the City's Grievance Committee and a hearing was held on May 16, 2005.  (SMF

45.)  During the hearing, Plaintiff, who was again represented by counsel, never

stated her belief that her termination was motivated by discriminatory animus.

(SMF 45.)  The Grievance Committee, which was comprised of three division

heads, all of whom are older than Plaintiff, and one department head who is

Plaintiff's age, voted unanimously based on the evidence presented to uphold

Plaintiff's termination.   (SMF 45-46.)   Hobby, the final decisionmaker,

subsequently finalized Plaintiff's termination on May 20, 2005.  (SMF 2, 46.)

In view of the foregoing, the City has satisfied its burden of articulating

legitimate, non-discriminatory reasons for Plaintiff's suspension and subsequent

termination.   See Holifield, 115 F.3d at 1563; Clark v. Coats & Clark, Inc., 990

F.2d 1217, 1228 (11th Cir. 1993).  Accordingly, the burden shifts back to Plaintiff

to prove that the City's articulated reasons are pretextual and that unlawful

_____

[6] Before effectuating her termination,  Hobby investigated the feasibility of
allowing Plaintiff to retire with full benefits as an alternative in recognition of her
long-term employment with the City.  (SMF 43.)   After learning that an early
retirement plan would be too costly for the City, however, Hobby proceeded with
Plaintiff's termination.  (SMF 43.)

discrimination actually motivated the decisions.[7/]   Plaintiff cannot carry this burden.

### 3.   Plaintiff Cannot Establish Pretext.

#### a.   The City's Reorganization in June 2004.

Plaintiff contends that some of the effects of the City's reorganization constitute evidence that her suspension and termination were discriminating. (SMF 17.)   First, she contends that she was not allowed to talk to Chris Hobby after the reorganization but instead, had to talk to McKown. (SMF 20.)   There is no evidence supporting this assertion.   Even if there was, such a prohibition is not evidence of unlawful discrimination.   To the contrary, such a directive would have been fully consistent with Plaintiff's chain-of-command since McKown was her supervisor, not Hobby.   Most importantly, three other department heads besides Plaintiff, who had previously reported directly to the City Manager before the reorganization, also began to report to a division head.   (SMF  16.)   Significantly, the employees were all males over forty, and one was older than Plaintiff.   (SMF 16.)   In light of these undisputed facts, no reasonable inference of discrimination can be drawn from this contention.   See Mize v. Jefferson City Bd. of Educ., 93

_____

[7/] With regard to her Title VII claim, Plaintiff must create a genuine issue of material fact as to whether sex was a motivating factor in the challenged employment actions.   See 42 U.S.C. §§ 2000e-2(m).   With regard to her ADEA claim, however, she must bear the more substantial burden of proving that age was the "but for" cause of the employment action.   See Gross v. FBL Financial Services, Inc., 129 S. Ct. 2343, 2352 (2009).

F.3d 739, 743 (11th Cir. 1996) (at summary judgment, reasonable of inference urged by plaintiff must be evaluated in light of "other undisputed background or contextual facts.").

Plaintiff also argues that the change of her job title from Purchasing Director to Purchasing Agent reflects discrimination. (SMF 17.) She admits, however, that these titles were used interchangeably throughout her career. (SMF 17.) In any event, the job title was changed to reflect the new organizational structure and is not evidence of any discriminatory animus toward Plaintiff. Thus, to the extent that Plaintiff contends the reorganization and its effects are evidence of discrimination against her, or bias toward "older women" or "older employees," the evidence belies her theory.

Plaintiff further contends that soon after McKown began to oversee her department, he began his effort to eliminate her employment because she is an older woman, beginning with the dissemination of an introductory memorandum to the entire Purchasing Department. Specifically, Plaintiff contends that the memorandum is evidence of discrimination because it did not state that she would remain the head of the Purchasing Department after the reorganization. (SMF 19.) To the contrary, the memorandum explicitly stated that there would be no "immediate personnel changes within the Purchasing Department" and, by her own admission, Plaintiff continued to supervise the Purchasing Department. (SMF 19.)

Plaintiff also asserts that around the time of the reorganization, McKown asked Sallye Goodin, one of her subordinates, for "dirt" about Plaintiff, as part of his plan to eliminate her employment because she is an older woman.  (SMF 21.) It is undisputed that McKown met individually with each of Plaintiff's employees shortly after taking over as Director of Administration for the purpose of inquiring about any existing personnel issues.  (SMF 22.)  It is further undisputed that McKown asked the employees in these meetings whether they were having problems with Plaintiff because he was aware of existing personnel issues within the Department.  (SMF 22.)  Plaintiff has offered no evidence whatsoever to demonstrate that these inquiries were motivated in any form or fashion by discriminatory animus toward Plaintiff.

### b.    Plaintiff's July 2004 Reprimand.

During Plaintiff's deposition, she asserted that as further evidence of discrimination, McKown gave her the only written reprimand she had ever received.  (SMF 31.)  On July 14, 2004, McKown instructed Plaintiff to prepare bids for two garbage trucks.  (SMF 23.)  Plaintiff believed, however, that the trucks had not been approved in the budget.  (SMF 23.)  When she discussed her concerns with McKown, he told her that he would handle it with accounting and that she should proceed as instructed.  (SMF 23.)  Instead of preparing the bids, Plaintiff disregarded McKown's request because of her perception that he was "new at this."

(SMF 23.)  Plaintiff, admittingly believing that she knew better than her boss, overstepped McKown and went directly to Chris Hobby, McKown's boss, to question McKown's authority.  (SMF 23.)

The following day, Hobby and McKown met with Plaintiff to counsel her about her insubordination.  During the meeting, they also counseled Plaintiff about other performance deficiencies, including the difficulties others were having working with her because of her hostile attitude.  (SMF 24-28, 30.)  Plaintiff responded to the reprimand by admitting that her insubordination was caused by "personal hurts and the influence of other people [who overrode her] decision making ability."  (SMF 32.)  Plaintiff did not deny the validity of the performance deficiencies described in the reprimand and agreed to work to improve them. (SMF 32.)  In view of this record, Plaintiff cannot establish that the reprimand was based on any discriminatory animus toward her.

### c.      McKown's Suspension of Plaintiff in February 2005.

Plaintiff contends that the first act of discrimination by the City occurred on February 7, 2005 when McKown suspended her without pay following a dispute between Plaintiff and one of her employees.  (SMF 48.)  In support of this contention, Plaintiff points to McKown's alleged remark that he was going to "get rid of the old folks and bring in new blood" in her attempt to show pretext.

As an initial matter, even if McKown made the statement, it is gender neutral and does not reflect any bias toward "women," let alone "older women." Furthermore, Plaintiff cannot establish the context in which the statement was made.  Tammy White, a former subordinate of McKown, testified that she heard McKown make a similar statement but it was just a "general statement" that was made amidst office talk.  (SMF 50.)   Similarly, Dianne Haire, also a former subordinate of McKown, testified that she heard McKown make a comment about "new blood" but "he was just talking in general as office talk goes."  (SMF 50.)

McKown admits having a conversation with several employees about his management philosophy and his belief that government employees have a tendency to become complacent in their work over time and, as a manager, he would not tolerate such behavior regardless of the length of one's tenure with an organization.  (SMF  51.)  Thus, even if McKown made the remark that he was going to "get rid of the old folks and bring in new blood," there is no evidence supporting a construction of this remark as evidencing an intention by McKown to terminate Plaintiff or any other employee because of their age.  At best, it could be construed as a general bias against employees, regardless of age, who had become complacent in their jobs.  Such a bias does not violate the ADEA.

In any event, Plaintiff cannot link McKown's remarks to the City's decisional process.[8/]   See Ash, 2006 WL 2219749 at *2 (stray remarks not uttered in context of challenged personnel actions are not sufficient circumstantial evidence to provide a reasonable basis for a finding of discrimination in the context of the employment decisions at issue).   In fact, less than a month after McKown allegedly made the remark, he gave Plaintiff a positive evaluation and 3% merit increase, an unlikely action from a supervisor with discriminatory animus toward Plaintiff. (SMF 36.)   See Mize, 93 F.3d at 743 (at summary judgment, reasonable of inference urged by plaintiff must be evaluated in light of "other undisputed background or contextual facts.").

McKown's personnel decisions also do not reflect a bias against older women.   While employed by the City, McKown hired and/or promoted four female employees, all of whom are significantly older than McKown (more than ten years), and who were all over forty at the time of hiring or promotion. (SMF 53.) The only employee he recommended for termination while at the City was Plaintiff. (SMF 53.)  Following his voluntary resignation from the City, McKown was hired as the Assistant City Manager for the City of Commerce. (SMF 53.) While employed by Commerce, McKown hired at least three females, and two

---

[8/] Tellingly, Plaintiff makes no reference whatsoever to McKown's alleged remark in her EEOC Charge. (SMF 48.)   Plaintiff also failed to inform management of the alleged remark at any time during her employment. (SMF 44-45, 52.)

- 22 -

male employees, all of whom were over the age of forty at the time of hire.  (SMF 53.)  The only person McKown terminated was a male employee under the age of forty.  (SMF 53.)  Thus, the evidence belies Plaintiff's contention that McKown harbored any discriminatory animus toward Plaintiff or any other "older" female employees.  <u>See</u> <u>Mize</u>, 93 F.3d at 743 (at summary judgment, reasonable of inference urged by plaintiff must be evaluated in light of "other undisputed background or contextual facts.").

In view of the foregoing, McKown's alleged remark that he was going to "get rid of the old folks and bring in new blood," or words to that effect, was nothing more than a stray comment that does not provide a basis for a finding of unlawful discrimination.  <u>See</u> <u>Standard v. A.B.E.L. Services, Inc.</u>, 161 F.3d 1318, 1329 (11th Cir. 1998) (holding single statement that "older people have more go wrong," and devoid of any meaningful context, as too vague to prove even generalized discriminatory animus where no other circumstantial evidence of discriminatory animus existed); <u>see also</u> <u>Cone v. Longmont United Hosp. Ass'n</u>, 14 F.3d 526 (10th Cir.1994) (holding that manager's statements that there was a need for "young blood" and that "long-term employees have a diminishing return" were "stray remarks" and that the "diminishing return" remark could be directed at length of tenure, not age).  Accordingly, when considering the totality of the evidence, it is clear that Plaintiff is unable to create a genuine issue of material fact

as to whether the City's proffered reasons for her suspension are pretext for sex and age discrimination.

### d.    Plaintiff's Termination

Plaintiff also contends that the City terminated her employment because she is an older woman.  (SMF 48.)  To survive summary judgment on this claim, Plaintiff must prove that Chris Hobby – the actual decision-maker with respect to her termination – terminated her employment because of her sex and age.  <u>See Hawkins v. Ceco Corp.</u>, 883 F.2d 977, 980 n.2 (11th Cir. 1989); <u>Elrod v. Sears Roebuck and Co.</u>, 939 F.2d 1466, 1470 (11th Cir. 1991).  The only evidence with any probative value with respect to Plaintiff's termination is the City's replacement of Plaintiff with Brenda Strickland, who, although also a female, is younger than Plaintiff.  (SMF 55.)  While this evidence might be sufficient to establish a prima facie case of age discrimination, without other circumstantial evidence of age discrimination, it falls far short of proving that the City terminated Plaintiff because of her age.  <u>See Carter v. City of Miami</u>, 870 F.2d 578, 584-85 (11th Cir. 1989) (despite establishing a prima facie of age discrimination by showing replacement of the plaintiff with a younger person who was in the plaintiff's protected class, the plaintiff could not establish pretext and was therefore not entitled to go to the jury on her ADEA claim).

Significantly, Strickland is older than Hobby and, Strickland herself, who was forty-four at the time she was promoted into Plaintiff's position, was in Plaintiff's protected class. (SMF 55.) In addition, Strickland was the oldest employee of the Purchasing Department, excluding Plaintiff. (SMF 55.) The evidence therefore contradicts Plaintiff's contention that Hobby is biased against "older women." See Mize, 93 F.3d at 743 (at summary judgment, reasonable of inference urged by plaintiff must be evaluated in light of "other undisputed background or contextual facts.").[9/]

Furthermore, Plaintiff contends that the City's treatment of Jan Smith and Francis Willis, former employees of the City, is evidence of discriminatory animus toward older women. (SMF 56.) The evidence is to contrary. Both employees voluntarily retired or resigned from the City and neither suffered any adverse action. (SMF 56.) To the extent Plaintiff seeks to rely on testimony that Amanda Glover, Director of Community Development, allegedly called Jan Smith an "old bitch" as evidence of discrimination, Plaintiff cannot establish that either Hobby or McKown, the relevant decision-makers, knew of or endorsed Ms. Glover's remark.

Hobby's personnel decisions also do not reflect a bias against older employees, let alone older women. Between January 2004 and December 2009, he

---

[9/] In her EEOC Charge, Plaintiff asserted her belief that her suspension and termination were discriminatory because of her tenure with the City and the effect of her termination on her retirement benefits. (SMF 48.) This is not probative of age discrimination. See Hazen Paper Co. v. Biggins, 507 U.S. 604, 611 (1993).

was involved in hiring twenty-eight employees over the age of forty, including seven females, two of whom are older than Plaintiff.  (SMF 54.)  See Mize, 93 F.3d at 743 (at summary judgment, reasonable of inference urged by plaintiff must be evaluated in light of "other undisputed background or contextual facts.").  In that same time period, Hobby was involved in the termination of six employees, including Plaintiff – three were females, one of whom was under forty and three were males, two of whom were under forty.  (SMF 54.)

Finally, even if McKown's alleged remark that he was going to "get rid of the old folks and bring in new blood" could be construed as evidence of discriminatory animus against Plaintiff, the remark cannot be imputed to the City with respect to its decision to terminate Plaintiff unless she can show that Hobby – the actual decision-maker – acted in accordance with McKown's recommendation or influence, without input from other sources or otherwise independently evaluating the situation.  See Dwyer v. Ethan Allen Retail, 325 Fed.Appx. 755, 757 (11th Cir.2009) ("Under [the cat's paw] theory, a non-decisionmaking employee's discriminatory animus may be imputed to a neutral decisionmaker when the decisionmaker has not independently investigated allegations of misconduct."); see also  Stimpson v. City of Tuscaloosa,  186 F.3d 1328, 1331 (11th Cir. 1999) ("When the biased recommender and the actual decisionmaker are not the same person or persons, a plaintiff may not benefit from the inference of causation that

would arise from their common identity.  Instead, the plaintiff must prove that the discriminatory animus behind the recommendation – and not the underlying employee misconduct identified in the recommendation – was an actual cause of the other party's decision to terminate the employee.")   At the outset, Plaintiff cannot establish that Hobby was even aware of McKown's alleged discriminatory remark, or any other discriminatory animus allegedly held by McKown. Furthermore, Hobby did not simply rubber-stamp McKown's recommendation. See Williams v. Alabama Dep't of Transp., 509 F.Supp.2d 1046, 1060 (M.D. Ala. 2007) (the bias of a recommender "corrupts the entire process where the decisionmaker merely rubber stamps the recommendation").  To the contrary, he considered additional statements from Plaintiff's employees, considered allowing Plaintiff to retire as an alternative to termination, met with Plaintiff and her attorney to allow Plaintiff the opportunity to explain her side of the story and mitigate the recommendation for termination, and he considered the unanimous decision of the Grievance Committee to uphold Plaintiff's termination.   (SMF 40, 42-44, 46.)  Notably, Plaintiff does not contend that any member of the Grievance Committee – each of whom was Plaintiff's age or older – held a discriminatory animus toward her. (SMF 47.)  See Elrod, 939 F.2d at 1471 (noting that inference of age discrimination is difficult to establish when participants in a challenged employment action are in same protected class as the plaintiff); see also Mize, 93

F.3d at 743 (at summary judgment, reasonable of inference urged by plaintiff must be evaluated in light of "other undisputed background or contextual facts.").

Accordingly, it is evident that Hobby's decision to terminate Plaintiff was made independent of McKown's influence and therefore, any discriminatory animus held by McKown did not influence Hobby's decision to terminate Plaintiff. See Holifield, 115 F.3d at 1563 (stating that the biases of one who neither makes nor influences the challenged decision are not probative in an employment discrimination case); see also Elrod, 939 F.2d at 1470 & n.2 (regardless of the motives of others involved, an employer can only be liable for a discriminatory motive harbored by the actual decisionmaker.)

IV.  **CONCLUSION**

For each of the foregoing reasons, Defendant respectfully requests that the Court grant this Motion for Summary Judgment in its entirety, and enter an appropriate Order dismissing this action with prejudice.

Respectfully submitted this 31st day of December, 2009.

s/ R. Read Gignilliat
R. Read Gignilliat
Georgia Bar No. 293390
Tracy L. Glanton
Georgia Bar No. 415008

- 28 -

ELARBEE, THOMPSON, SAPP & WILSON, LLP
800 International Tower
229 Peachtree Street, N.E.
Atlanta, Georgia  30303
404-659-6700
404-222-9718 (facsimile)
gignilliat@elarbeethompson.com
glanton@elarbeethompson.com

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION


SHIRLEY MORRISON,                    )
                                     )
            Plaintiff,               )
                                     )
     v.                              )   CIVIL ACTION NO.
                                     )   1:07-CV-139 (WLS)
CITY OF BAINBRIDGE, et al.,          )
                                     )
            Defendants.              )
_____)


## <u>CERTIFICATE OF SERVICE</u>


I hereby certify that a true and correct copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CITY OF BAINBRIDGE'S MOTION FOR SUMMARY JUDGMENT** was filed with the Clerk of the Court using the CM/ECF system, which will send notification and a copy of such filing to the following

John D. Wales
Barbara M. Heyne
Law Offices of John D. Wales
3330 Cumberland Blvd.
Suite 500
Atlanta, Georgia 30339

Respectfully submitted this 31st day of December, 2009.

<u>s/ R. Read Gignilliat</u>
R. Read Gignilliat
Georgia Bar No. 293390
Tracy L. Glanton
Georgia Bar No. 415008

ELARBEE, THOMPSON, SAPP & WILSON, LLP
800 International Tower
229 Peachtree Street, N.E.
Atlanta, Georgia  30303
404-659-6700
404-222-9718 (facsimile)
<u>gignilliat@elarbeethompson.com</u>
<u>glanton@elarbeethompson.com</u>

Attorneys for Defendants

3495-3

- 2 -