**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

SHIRLEY MORRISON,             :
                                          :
        Plaintiff,             :
                                            :
v.                              :       CASE NO.: 1:07-CV-139 (WLS)
                                            :
CITY OF BAINBRIDGE, GEORGIA,      :
                                            :
        Defendant.           :
_____:

## ORDER

Presently pending before the Court is Defendant City of Bainbridge's Motion for Summary Judgment (Doc. 75). For the following reasons, Defendant City of Bainbridge's Motion for Summary Judgment (Doc. 75) is **GRANTED**.

## PROCEDURAL HISTORY

Plaintiff, Shirley Morrison is a female over fifty-years of age. Plaintiff is a former employee of Defendant City of Bainbridge. Plaintiff filed a two-count Complaint (Doc. 1) against the City of Bainbridge, Chris Hobby, and Steve McKown in this Court on February 9, 2006. Plaintiff alleges that Defendants wrongfully terminated her public employment in violation of federal law including the equal protection clause of the 14th Amendment pursuant to 42 U.S.C. §1983, intersectional discrimination (sex plus age) in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*., and the Age Discrimination in Employment Act of 1976, 29 U.S.C. §§ 621 *et seq*.

By Order of the Court on September 4, 2009 (Doc. 50), the Court granted-in-part and denied-in-part Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 29). This effectively terminated claims against Defendants Chris Hobby and Steve McKown and

dismissed the parties from the action. The Court's Order also terminated Plaintiff's claim regarding intersectional discrimination (sex plus age) contained in Count Two under § 1983.

Plaintiff believes that Defendant City of Bainbridge engaged in age and sex discrimination. However, according to Plaintiff, discovery failed to provide sufficient factual support under existing law to withstand summary judgment, so she now pursues her strongest claim of age discrimination and is not posting opposition to Defendant's Motion for Summary Judgment as to sex discrimination. Appropriately, the Court grants Defendant summary judgment on Plaintiff's Title VII sex discrimination claim. See Road Sprinkler Fitters v. Independent Sprinkler Corp., 10 F.3d 1563, 1568 (11th Cir. 1994) (claims not addressed in response to Motion for Summary Judgment deemed abandoned).

The sole remaining Defendant, City of Bainbridge, now brings its Motion for Summary Judgment (Doc. 75) asserting that no genuine issue of material fact exists as to the sole remaining Count (Count One) and that Defendant is entitled to judgment as a matter of law. Count One of the Complaint alleges age discrimination in violation of the Age Discrimination in Employment Act of 1976 ("ADEA"). For the reasons stated in the Discussion section of this Order, *infra*, the Court finds Summary Judgment to be appropriate as to Count One.

## FACTUAL SUMMARY

The following summary of relevant facts contains the undisputed facts derived from (i) the Complaint (Doc. 1), Defendant's Answer (Doc. 6), Plaintiff's First Amended Complaint (Doc. 28), Defendant's Answer to Plaintiff's First Amended Complaint (Doc. 31), Defendant's Statement of Material Facts as to Which There is No Genuine Issue (Doc. 75-2), and Plaintiff's Response thereto (Doc. 79), which were submitted pursuant to Local Rule 56.[1] Where relevant,

---

[1] Local Rule 56 states:

the factual summary also contains undisputed and disputed facts derived from the pleadings, the discovery and disclosure materials on file, and any affidavits, all of which are construed in a light most favorable to Plaintiff as the nonmoving party.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Fed. R. Civ. P. 56.

Plaintiff, Shirley Morrison is a female over fifty-years of age.  (Doc. 1).  Plaintiff is a former employee of Defendant, City of Bainbridge, Georgia.  Id.  Defendant is a municipal corporation in the State of Georgia.  (Doc. 75-3 at 1).  Plaintiff began her employment with Defendant on October 14, 1977.  (Doc. 28).  Plaintiff worked in Defendant's purchasing department for twenty-seven years and seven months.  Id.

During her employment, Plaintiff rose to Purchasing Director and, prior to reorganization within City government, Plaintiff reported directly to the City Manager.  (Doc. 75-3 at 2-6). Charles Tyson was the City Manager during the majority of Plaintiff's employment, from 1984 until 2002.  (Doc. 75-3 at 2).  As her manager, Tyson experienced personality differences and difficulties with Plaintiff on several occasions.  (Doc. 75-3 at 3).  Despite any issues Tyson

---

The movant for summary judgment under Rule 56 of the Federal Rules of Civil Procedure shall attach to the motion a separate and concise statement of the material facts to which the movant contends there is no genuine issue to be tried.  Each material fact shall be numbered separately. Statements in the form of issues or legal conclusions (rather than material facts) will not be considered by the court.  Affidavits and the introductory portions of briefs do not constitute a statement of material facts.

The respondent to a motion for summary judgment shall attach to the response a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine issue to be tried. Response shall be made to each of the movant's numbered material facts. All material facts contained in the moving party's statement which are not specifically controverted by the respondent in respondent's statement shall be deemed to have been admitted, unless otherwise inappropriate. The response that a party has insufficient knowledge to admit or deny is not an acceptable response unless the party has complied with the provisions of Rule 56(f) of the Federal Rules of Civil Procedure.

All documents and other record materials relied upon by a party moving for or opposing a motion for summary judgment shall be clearly identified for the court. Where possible, dates, specific page numbers, and line numbers shall be given.
M.D. Ga. R. 56.

encountered with Plaintiff as her manager, he never formally disciplined Plaintiff. (Doc. 75-3 at 4). Plaintiff believes that Tyson never discriminated against her. (Doc. 75-3 at 5, 79-2 at 3). Tyson retired in December of 2002. Id.

Following Tyson's retirement, Chris Hobby became City manager and Plaintiff reported directly to him. (Doc. 75-3 at 3). In June 2004, Defendant instituted a reorganization plan within the management structure of Defendant's City Government, including Plaintiff's department. (Doc. 75-3 at 6). As part of the reorganization and Plaintiff's new role, Plaintiff's title was modified from Purchasing Director to Purchasing Agent. (Doc. 75-3 at 6, Doc. 79-2 at 4). Although viewed by Plaintiff as a demotion, Plaintiff's salary remained unchanged and she continued to supervise the Purchasing Department. Id. Throughout her tenure with the City, Plaintiff supervised between three and five employees. (Doc. 75-3 at 3). The reorganization eliminated several departments and reassigned department heads. (Doc. 75-3 at 6). Within the City government structure, there remained six new "divisions" and Plaintiff's department became part of the "General Administration" division. (Doc. 75-3 at 6). Plaintiff believes this reorganization began a campaign to eliminate older women employees. (Doc. 28 at 3).

In addition to other changes, Plaintiff now began reporting to Steven McKown, who had recently been promoted to Director of General Administration. (Doc. 75-3 at 6, 79-2 at 3). Plaintiff and McKown had both worked for Defendant for several years. Id. When he assumed the role of Director of General Administration, McKown issued a memorandum to his employees. (Doc. 75-3 at 7, Doc. 79-2 at 4). The June 22, 2004 memorandum encouraged employees (including those that reported directly to Plaintiff) to communicate any problems and concerns directly to McKown. (Doc. 75-3 at 7, Doc. 75-7). The memorandum did not state that

Plaintiff would remain the head of the purchasing department, although it did state that no personnel changes were occurring within the Purchasing Department. Id.

After the reorganization, Plaintiff was advised that she could no longer "talk" to Hobby because she now reported to McKown. (Doc. 75-3 at 8). Shortly thereafter, McKown asked Sallye Goodin, an employee of Defendant reporting to Plaintiff, for "dirt to put [Plaintiff] out of her position." (Doc. 79-6 at 1). McKown felt that Plaintiff was a source of problems within the Purchasing Department. (Doc. 75-3 at 8, 79-2 at 5). McKown began to inquire with Plaintiff's employees about any personnel issues. (Doc. 75-3 at 8).

A conflict arose between Plaintiff and McKown involving the preparation of bids for two garbage trucks. (Doc. 75-3 at 9, 79-2 at 5). Plaintiff failed to carry out a request by McKown to complete these bids in fear that the trucks had not been approved in the budget. Id. For reasons disputed by the parties, instead of completing her assigned task, Plaintiff sought permission from McKown's supervisor, Hobby. Id. McKown and Hobby were upset about Plaintiff's actions and "other performance deficiencies" and met with Plaintiff. (Doc. 75-3 at 9, 79-2 at 6). Plaintiff received a formal written reprimand on July 15, 2004. (Doc. 75-7 at 14). The reprimand referenced several grounds of dissatisfaction including: complaints from vendors that "detest[ed]" dealing with Plaintiff, employees that felt "torment[ed]" by Plaintiff, customers that found dealing with Plaintiff "dreadful," and a "bottleneck" and "work lag" in Plaintiff's department as a result of her failure to delegate. (Doc. 75-3 at 9-11, Doc 75-7 at 14-15, Doc. 79-2 at 5-6).

The formal reprimand also reminded Plaintiff that she was "a subordinate employee to every division leader and the City Manger," and that she worked only at McKown's "discretion." (Doc 75-7). Plaintiff was further instructed to bring any issues first to McKown. Id. The formal

reprimand stated that Plaintiff was the "weakest link in [our] management structure." Id. Plaintiff prepared a written response to the July 15, 2004 reprimand in order to "appease" McKown and Hobby.  (Doc. 75-3 at 12).

The parties dispute whether a face-to-face performance evaluation occurred in November, 2004.  (Doc. 75-3 at 13, 79-2 at 8).  However, an "Annual Evaluation" was completed and signed by both parties between November 15, 2004 and November 16, 2004. (Doc. 75-7 at 18).  The Annual Evaluation stated that Plaintiff's division was still experiencing a "work bog."  The Annual Evaluation also further discussed Plaintiff's "compulsive" thoroughness believed to be a contributing factor to the delay issues in her division.[2]  Even though the Annual Evaluation suggested numerous areas for improvement, Plaintiff was granted a three (3%) per-cent merit raise.  (Doc. 75-3 at 13).  Defendant based this raise on its perception that Plaintiff was attempting to improve her performance.  Id.

In February of 2005, McKown received a complaint from Plaintiff's secretary, Tonya Alphord.  (Doc. 75-3 at 13).  The complaint involved a dispute that resulted in Alphord leaving the office and ending her employment with Defendant.  (Doc. 79-2 at 8).  McKown investigated the complaint and met with the other employees in the Purchasing Department, Brenda Strickland and Sallye Goodin, to determine what had occurred between Plaintiff and Alphord. (Doc. 65-3 at 14).  McKown then asked each of Plaintiff's employees to prepare a written statement describing the events that took place.  Id.

---

[2]  The record reflects that Plaintiff's attention to detail was a widely discussed topic within the Defendant's organization.  Several affiants described Plaintiff's supervisory style in a micro-managerial manner.  See generally Doc. 75 -8, 75-9, 75-10, 75-11, 75-12, 75-13 and 75-14.  The Court is aware of the circumstances under which these documents were prepared, but notes the content of these statements and declarations.  For example, two affiants, Brenda Strickland and Scarlett Funderburke, describe Plaintiff's method of "hyper-perfectionism" involving reviewing documents.  Affiant Strickland stated the following:  "[Plaintiff] would take twice as long as was necessary to review a document for processing because she would highlight every word to indicate she had read it, photocopy the document, and then review the "photocopy" to make sure that it was an exact copy of the original." See generally Doc. 75-3, Ex. F Strickland Decl.

While the parties dispute the inciting incident leading to Alphord's walk-out, it is undisputed that the situation escalated. (Doc. 75-3 at 14, 79-2 at 9). McKown concluded that the fault was Plaintiff's and that she should be suspended. Id. Plaintiff was suspended and McKown submitted a recommendation to Hobby that Plaintiff be terminated. Id. The recommendation included the statements he requested from Plaintiff's employees regarding the dispute between Plaintiff and Alphord. (Doc. 75-3 at 14).

Hobby reviewed McKown's recommendation and requested additional statements from Plaintiff's employees regarding their work experience with Plaintiff. (Doc. 75-3 at 13, 79-2 at 9). McKown again met with Plaintiff's employees and requested additional statements regarding their overall work experience with Plaintiff. Id. McKown and Hobby determined that the statements obtained by McKown detailed behavior that was, in their opinion, outside Defendant's acceptable conduct standards. Id.

Hobby decided to terminate Plaintiff's employment. (Doc. 75-3 at 15). Prior to her termination, Hobby investigated the feasibility of an alternative; allowing Plaintiff to retire with full benefits in recognition of her long-term employment with Defendant. (Doc. 75-3 at 16). Ultimately, Hobby decided that the parties should proceed pursuant to Defendant's Employee Personnel policies. (Doc. 75-3 at 16). Plaintiff, through her attorney, appealed her termination. Id. Plaintiff never reported prior to or during this appeal that she felt her proposed termination was motivated by unlawful discrimination. Id. Nor, did Plaintiff communicate any allegations regarding discriminatory comments made by Hobby or McKown at this time. Id.

Plaintiff's appeal of her termination was heard by a Grievance Committee. (Doc. 75-3 at 16). The Grievance committee was comprised of three males; two members were younger than Plaintiff and one member was older than Plaintiff. (Doc. 79-2 at 9). The Grievance Committee

voted unanimously to uphold Plaintiff's termination. (Doc. 75-3 at 17). Ultimately, Hobby, the final decision maker, finalized Plaintiff's termination on May 20, 2005. (Doc. 75-3 at 17). Plaintiff does not contend that any member of the Grievance Committee holds discriminatory animus towards her. Id. On June 21, 2005, Plaintiff filed an EEOC charge. Id.

Plaintiff bases her allegations of age discrimination on a plan McKown initiated to terminate her due to her age. Plaintiff saw evidence of McKown's intentions through remarks she overhead McKown make in October 2004. (Doc. 75-3 at 17, Doc. 79-2 at 10). McKown was exiting Hobby's office and made the statement that he indented to "get rid of the old folks…" and "bring in new blood." (Doc. 79-2 at 10, Doc. 79-5 at 2). Plaintiff and another older female employee heard the remark, but could not discern who the remark was directed towards. Id. The other female employee that overheard the remark was eventually demoted and ultimately retired. Id. The other older female employee feels her retirement was due, in part, to pressure that she believes came from management's feelings about her status as an older female employee. (Doc. 79-5 at 3-4).

Other employees of Defendant acknowledge that McKown made similar remarks in their presence. (Doc. 75-3 at 18). McKown states that he does not recall making the statement in question. Id. He also states that his general philosophy is that government employees have a "tendency to become complacent in their work." Id., Doc. 79-2 at 11. Thus, if the statements were made, he attributes them to this philosophy. Id. According to McKown, his management strategy and communications in this vein ["new blood"] arise from his position that "he would not tolerate such behavior regardless of how many years the employee had been employed." Id.

During his employment with Defendant, McKown hired and/or promoted four female employees, each of whom is more than ten years older than McKown and all of whom were over

the age of forty at the time of hiring or promotion. (Doc. 75-3 at 19). Defendant replaced

Plaintiff with Brenda Strickland. (Doc. 75-3 at 20). Plaintiff admits that Strickland is qualified

to do the job, and had worked directly under Plaintiff since 1985. Id. However, two former

employees of Defendant, both older women, Jan Smith and Frances Willis, were reorganized to

their detriment under McKown's tenure. (Doc. 75-3 at 21). The parties dispute the effects of the

discriminatory treatment on these older female employees, but Plaintiff has presented evidence

that shows that at least one employee, Jan Smith, was referred to as "an old bitch" by a member

of Defendant's management. Id.

Plaintiff contends that the following employees were not terminated for similar or more

egregious offenses than those committed by Plaintiff: Dewayne Logue, a mechanic for

Defendant, Gene Powell, a pump operator in the Fire Department, Bob Gardner, a building

inspector, Tommy King, Public Works Director, and Larry Funderburke, Public Safety Director.

(Doc. 75-3 at 20-22).

## DISCUSSION

### A.      Summary Judgment Standard

Pursuant to Fed. R. Civ. P. 56, summary judgment is proper "if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). An issue is "genuine" if

the quantum and quality of proof necessary to support liability under the claim is raised. Allen v.

Tyson Foods, 121 F.3d 642, 646 (11th Cir. 1997). A fact is "material" if it hinges on the

substantive law at issue and it might affect the outcome of the nonmoving party's claim.

Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); see also Allen, 121 F.3d at 646. A

judgment is appropriate "as a matter of law" when the nonmoving party has failed to meet its burden of persuading the Court on an essential element of the claim. See Cleveland v. Policy Management Sys. Corp., 526 U.S. 795, 804 (1999); Celotex, 477 U.S. at 323.

The movant bears the initial burden of showing that there is no genuine issue of material fact. See Celotex, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by showing, or by pointing out to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. See id. at 322-24. Once the movant has met his burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." Id. at 324. To avoid summary judgment, the nonmoving party must do more than summarily deny the allegations or 'show that there is some metaphysical doubt as to the material facts." Matsuhita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

On a motion for summary judgment, the Court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict. See Celotex, 477 U.S. at 322-23; Allen, 121 F.3d at 646. However, the Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(c).

B.    **Discrimination under the ADEA**

Plaintiff believes that Defendant City of Bainbridge engaged in age and sex discrimination. However, according to Plaintiff, discovery failed to provide sufficient factual support under existing law to withstand summary judgment as to each of her remaining claims,

so she now pursues her strongest claim of age discrimination and is not posting opposition to Defendant's Motion for Summary Judgment as to sex discrimination. (Doc. 79 at 2).[3]

Plaintiff's Complaint (Doc. 1) and First Amended Complaint (Doc. 28) articulate her age discrimination claim. Plaintiff believes she was treated in an unfavorable manner and ultimately discharged because she was an older employee. Defendant contends that it is entitled to summary judgment as to Plaintiff's age discrimination claim.

The ADEA makes it unlawful for an employer to discharge any individual because of her age. See 29 U.S.C. § 623(a)(1). "In an employment discrimination case, the plaintiff must produce sufficient evidence to support an inference that the defendant-employer based its employment decision on an illegal criterion." Benson v. Tocco, Inc., 113 F.3d 1203, 1207 (11th Cir. 1997). To establish an age discrimination claim pursuant to the ADEA in the absence of direct evidence pursuant to the McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) burden-shifting analysis employed by the Eleventh Circuit Court of Appeals, a plaintiff must first establish a prima facie case by demonstrating (1) that she was a member of the protected age group (between forty and seventy), (2) was subjected to an adverse employment action, (3) was qualified to do the job, and (4) was replaced by a younger individual outside her protected class or suffered disparate treatment because of her membership in the protected class. Kelliher v. Veneman, 313 F.3d 1270, 1275 (11th Cir. 2002); see Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir. 2000) (noting approval of McDonnell Douglas, 411 U.S. 792 (1973) burden-shifting analysis as applicable to evaluation of ADEA claims). Additionally, Plaintiff can also establish a case of discriminatory discharge based on her age if she "shows that 'the misconduct for which [she] was discharged was nearly identical to that engaged in by [an employee outside

---

[3] Appropriately, the Court grants Defendant summary judgment on Plaintiff's Title VII sex discrimination claim. See Road Sprinkler Fitters v. Independent Sprinkler Corp., 10 F.3d 1563, 1568 (11th Cir. 1994), (claims not addressed in response to Motion for Summary Judgment deemed abandoned).

the protected class] whom [Defendant] retained.'" <u>Brillinger v. City of Lake Worth</u>, 317 Fed. App'x 871, 876 (11th Cir. 2008) quoting <u>Nix v. WLCY Radio/Rall Commc'ns</u>, 738 F.2d 1181, 1185 (11th Cir. 1984).

If Plaintiff establishes a prima facie case of discrimination, Defendant must articulate a legitimate, nondiscriminatory reason for her discharge. <u>See</u> <u>Chapman</u>, 119 F.3d at 1024. Defendant's legitimate, nondiscriminatory reason[4] need not conclusively persuade the Court, but it must raise a genuine issue of material fact as to whether or not Plaintiff suffered discrimination. <u>Id.</u> Next, Plaintiff may avoid summary judgment by showing that Defendant's proffered reason is mere pretext, in that age discrimination was actually the reason for Plaintiff's discharge. <u>See</u> <u>id.</u> at 1024-25.

1. <u>Plaintiff failed to establish a prima facie case.</u>

Plaintiff has established the initial three factors in her prima facie case; in that, at the time of her discharge, Plaintiff was over 40 years old, was terminated, and was qualified for her job. <u>See</u> <u>Kelliher</u>, 313 F.3d at 1275. Additionally, both Plaintiff and Defendant agree that Plaintiff's replacement, Brenda Strickland, was also within her protected category (between forty and seventy) since she was age forty-four at the time of her promotion into Plaintiff's position. Since Plaintiff cannot establish the fourth factor, that she was replaced by a younger individual outside her protected class, she may meet the requirements of a prima facie case by now showing that she suffered disparate treatment on account of her age. <u>See</u> <u>id.</u>

This element may be demonstrated by pointing to disparate treatment between Plaintiff and comparator employees "similarly situated in all relevant respects." <u>Holified v. Reno</u>, 115 F.3d 1555, 1562 (11th Cir. 1997). Further, "'the quantity and quality of the comparator's

---

[4]  The employer's reason need not have been "prudent or fair," and the employee may have been terminated for "a good or bad reason, without violating federal law." <u>Damon v. Fleming Supermarkets of Florida, Inc.</u>, 196 F.3d 1354, 1361 (11th Cir. 1999).

misconduct [must] be nearly identical [to Plaintiff's] to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges.'" McCann v. Tillman, 526 F.3d 1370, 1373 (11th Cir. 2008) quoting Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999). Summary judgment is appropriate where no other evidence of discrimination is present if Plaintiff "fails to show the existence of a similarly situated employee." Holified, 115 F.3d at 1562.

To this end, Plaintiff identifies five comparators. Plaintiff believes these five employees, Dewayne Logue, Gene Powell, Tommy King, Bob Gardner, and Larry Funderburke were similarly situated to her. Each of these named employees is male and known to be older than Plaintiff. According to Plaintiff, each of these employees also engaged in conduct similar or more egregious than Plaintiff's alleged conduct, but none were discharged. In contrast, Defendant disputes that any of the five employees identified by Plaintiff are similarly situated such at they are proper comparators. Plaintiff has failed to show that any of the older male employees engaged in conduct similar to Plaintiff's, which Defendant describes as "fostering a hostile work environment through intimidation, rudeness and condescension toward others." See generally Defendant's Motion for Summary Judgment (Doc. 75).

A perfect comparator would have held the same position or level of responsibility and similar duties as Plaintiff did at the time of her discharge, engaged in conduct of a quantity and quality nearly identical to Plaintiff's alleged misdeeds, and supervised by the same decision-makers with knowledge of the alleged misdeeds. See McCann v. Tillman, 526 F.3d 1370, 1373 (11th Cir. 2008) However, a perfect comparator is unavailable in the instant action.

Plaintiff states that two primary situations that led to her discharge– the formal reprimand and the later confrontation with Alphord– and are analogous to the wrongful conduct committed

by the five individuals she identified as similarly situated comparators who received favorable treatment. In reply, Defendant disputes all of the bases for Plaintiff's comparisons with these five employees. Defendant states that comparator Logue, unlike Plaintiff, was never accused of creating a hostile work environment for the employees he supervised. Although Logue was disciplined by Defendant, Defendant states that any demotion he experienced arose from actions unrelated to these disciplinary issues. Defendant further replies that comparator Powell is an improper comparator because Plaintiff cannot prove any disciplinary action was ever taken against him. Defendant contends that the only basis of comparison between Plaintiff and Powell is that Powell was allowed to retire following his completion of thirty (30) years of employment for Defendant.

Defendant also disputes the basis of comparison between Plaintiff and employee Bob Gardner. Bob Gardner was involved in an allegedly public and heated dispute with Hobby that did not result in his termination. Plaintiff alleges that comparators Larry Funderburke, Director of Public Safety, and Tommy King, Public Works Director, like Plaintiff, both experienced complaints from employees under their supervisory control.[5] Despite her assertions, Plaintiff failed to present evidence that relevant decision-makers had knowledge of the alleged wrongful conduct that comparators Funderburke and King allegedly engaged in toward their employees. The Court makes no findings as to the merit of Plaintiff's allegations against any of these comparators as related to their alleged wrongful behavior while employed with Defendant since Plaintiff has failed to establish Defendant's knowledge. As to the comparators, the Court finds that the record before the Court is insufficient to support Plaintiff's assertions regarding their

---

[5] Plaintiff could not show any evidence of the "numerous" complaints that she alleges exist against comparators Funderburke and King. However, comparator Funderburke appears to have complaints regarding his experiences with Plaintiff in a professional environment. In his declaration, Funderburke details an experience that occurred in City Hall where "[Plaintiff] lash[ed] out and yell[ed] [at him] for no reason. This type of conduct from [Plaintiff] was typical of [Plaintiff]." See Doc. 75-8, Ex. Dec. of Larry Funderburke.

behavior, and thus any comparisons to Plaintiff's behavior.[6]  Although comparators Funderburke and King, like Plaintiff, both supervised employees and followed a similar reporting structure to the City Manager prior to the reorganization, they are dissimilar.  Comparators Funderburke and King appear to have markedly different levels of responsibility and job duties than Plaintiff.[7]

The Court finds that of the five purported comparators, none provide a sufficient apples to apples comparison such that the quantity and quality of alleged misconduct even approaches Plaintiff's alleged wrongful conduct.  See McCann, 526 F.3d at 1373.  A thorough review of the record indicates that none of the comparators was alleged to have committed any substantially similar conduct (*i.e.* conduct necessitating a formal disciplinary reprimand) as compared to Plaintiff's that resulted in the July 2004 Formal Reprimand and brief suspension.  Therefore, Plaintiff fails to establish a prima facie case of discrimination.

2.    There exists a legitimate, nondiscriminatory reason for termination.

Even if Plaintiff were to establish a prima facie case, Defendant proffers a legitimate, nondiscriminatory reason for Plaintiff's discharge.  Plaintiff's termination was based on Plaintiff's "prior complaints, [the decision maker's] own personal experiences with [Plaintiff's] conduct" and the conclusion that "her employees were fearful and intimidated by her, and that her employment was no longer in the City's best interest.[8]  See Doc. 75-4 at 8.  In support of its

---

[6] Significantly, Plaintiff has presented no evidence regarding any of the comparators, and the Court has found none in its review, that can be construed as comparable to the written disciplinary history Defendant created during its relationship with Plaintiff for the purposes of this analysis under the ADEA.

[7] For example, at one time, comparator Funderburke was Chief of Police.  He is also responsible for the Fire and Police Department.  See Doc. 75-8, Ex. Dec. of Larry Funderburke.

[8] Defendant describes Plaintiff's employees as "fearful and intimidated" by Plaintiff.  However, the record shows a more toxic work environment.  The Court construes the record in a light favorable to Plaintiff; however, the record supports the conclusion that Plaintiff's regime was less than pleasant.  The record shows that Plaintiff employed a compulsive and micro-managerial style and that Plaintiff's employees regarded her administration as "miserable." See Doc. 75-7, Ex. 9 ("[Plaintiff] is the most nit-picking person that I have ever come across she stresses over little things and makes everybodys (*sic*) life miserable").  The record also reflects that Plaintiff was vocal when displeased with her employees.  See Doc. 75-7, Ex. 10 ("[Plaintiff] often loudly criticized her staff, including me, in front of other employees.")  The record also reflects that Plaintiff's department suffered from morale issues.  See

15

position, Defendant has provided several documents that chronicle the disciplinary history of Plaintiff regarding her employee's dissatisfaction.

Namely, Defendant provided a Formal Reprimand dated July 15, 2004 that clearly communicated an issue with Plaintiff's work performance. In the Reprimand, Plaintiff is chastised regarding "performance deficiencies," including: complaints from vendors that "detest[ed]" dealing with Plaintiff, employees that felt "torment[ed]" by Plaintiff, customers that found dealing with Plaintiff "dreadful," and a "bottleneck" and "work lag" in Plaintiff's department as a result of her failure to delegate. (Doc. 75-3 at 9-11, Doc 75-7, Doc. 79-2 at 5-6). Plaintiff was suspended and ultimately terminated less than a year later, following an altercation with her secretary.

Plaintiff signed this Formal Reprimand and even submitted a written letter in response. See Doc. 75-2, 75-3, 75-4. While Plaintiff's response does not allege any disparate treatment relating to her age or complaints related thereto, she does state, among other things, that "[she] appreciate[d] [Defendant] bringing these areas to my attention." Further, the response states "[Plaintiff] wish[ed] [Defendant] had done this sooner, so that [Plaintiff] could have already started improving on [the issues giving rise to the Formal Reprimand]." The Court notes that Plaintiff provides an alternative reason for accepting responsibility for the host of issues detailed in the Formal Reprimand. Plaintiff argues that she wanted to keep her job and "appease" her manager, McKown. However, a review of the document also shows context that would leave the Court to conclude that the issues were not all exaggerated by Defendant.[9]

---

Doc. 75-7 Ex. 11 ("[t]he very thought of having to come to work and listen to the different comments [made by Plaintiff] off and on all day was enough to make me want to stay home.")

[9] For example, Plaintiff further stated "[Plaintiff] allowed [her] personal hurts and the influence of other people to over-ride [her] decision making ability; while the whole time [Plaintiff] thought [she] was doing the right thing. For that [Plaintiff] apologize[d]." See Doc. 75-2, 75-4.

3.      <u>Plaintiff fails to establish a pretext.</u>

Plaintiff contends that she can sufficiently establish pretext, in that Defendant's termination of her employment coincides with the termination and demotion of other veteran female employees over the age of 40.  Plaintiff presents evidence of comments McKown made that support a campaign to treat older employees in a wrongful manner and bring in "new blood." Also, two former employees of Defendant, both older women, Jan Smith and Frances Willis, were reorganized to their detriment under McKown's tenure.  Plaintiff has also presented evidence that shows that at least one employee, Jan Smith, was referred to as "an old bitch" by a member of Defendant's management.  Plaintiff alleges that despite the satisfactory performance of these older employees, including Plaintiff, younger employees were retained and older employees were removed.

In contrast, Defendant states that it showed that it had a good faith basis for its termination of Plaintiff and the other employees.  There exists no basis to find that Defendant had a pattern of discharging individuals based upon their age and similarly discharged Plaintiff based upon that protected characteristic.  To establish pretext, Plaintiff must show that age discrimination was actually the reason for Plaintiff's discharge or that Defendant's proffered explanation is "unworthy of credence."  <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 147 (2000); *see* <u>Chapman</u>, 119 F.3d at 1024-25.  The Court finds Plaintiff cannot establish pretext.

Defendant states Plaintiff was discharged for creating a hostile work environment, and has provided evidence in support of this contention.  Plaintiff has not provided evidence to sufficiently refute that Defendant's assertion that she created a hostile work environment is without any merit and is thus pretext  Defendant had a reason for terminating Plaintiff.  The

Court notes that, given Plaintiff's long history of service to Defendant, her termination is extremely unfortunate. However unfortunate, Plaintiff's termination was not illegal. An employer's reason for termination "need not have been "prudent or fair," and the employee may have been terminated for "a good or bad reason, without violating federal law." Damon v. Fleming Supermarkets of Florida, Inc., 196 F.3d 1354, 1361 (11th Cir. 1999).

There is simply no genuine issue of material fact to establish that Defendant did not proceed in good faith. Defendant discussed performance issues with Plaintiff prior to her termination and she was formally reprimanded. After a disruptive incident on her watch, Defendant conducted an investigation and ultimately discharged Plaintiff. Plaintiff appealed her termination to a Grievance Committee and was allowed to pursue the appeals process. It is undisputed that Plaintiff's appeal of her termination was heard by a Grievance Committee. Plaintiff neither reported prior to or during this appeal that she felt her proposed termination was motivated by unlawful discrimination nor communicated any allegations regarding discriminatory comments made by Hobby or McKown at this time.

The Grievance committee was comprised of three males; two members were younger than Plaintiff and one member was older than Plaintiff. The Grievance Committee voted unanimously to uphold Plaintiff's termination. Plaintiff does not contend that any member of the Grievance Committee holds discriminatory animus towards her or that they acted knowingly to promote or enforce any such animus on behalf of Defendant. Thus, while Plaintiff can dispute that she engaged in wrongful conduct that was, in her opinion, sufficient basis for termination, even viewed in the light most favorable to Plaintiff, there simply is no genuine issue of material fact sufficient to preclude summary judgment as to Plaintiff's age discrimination claim. That is, Defendant's investigation may or may not have demonstrated with absolute certainty that

Plaintiff created a hostile work environment, but Defendant sufficiently establishes that it investigated Plaintiff based upon a nondiscriminatory impetus and had sufficient foundation for its findings. Whether or not Defendant's reasons were "prudent or fair," there is no genuine issue of material fact as to Plaintiff's contention that Defendant's reason violated federal law. Damon v. Fleming Supermarkets of Florida, Inc., 196 F.3d at 1361. Accordingly, Defendant's Motion for Summary Judgment (Doc. 30) is **GRANTED** as to Plaintiff's ADEA age discrimination claim.

## CONCLUSION

Accordingly, for the foregoing reasons, Defendant's Motion for Summary (Doc. 75) is **GRANTED**. Judgment shall be entered for Defendant as to Plaintiff's claim.


**SO ORDERED**, this  21st  day of September, 2010.


 /s/ W. Louis Sands
**THE HONORABLE W. LOUIS SANDS,**
**UNITED STATES DISTRICT COURT**